UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-41 (WMW/BRT)

UNITED STATES OF AMERICA,
                    Plaintiff,

        v.

DYLAN MATTHEW DELING,
A/K/A "JASON KEENS,"
A/K/A "DYLAN NASH,"

                    Defendant.

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

**(FILED UNDER SEAL PURSUANT TO LR 49.1(c)(1)(C))**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Miranda E. Dugi, Assistant United States Attorney, hereby submits its position with respect to sentencing of defendant Dylan Matthew Deling.

Within weeks of his release from jail on a state child pornography conviction in 2018, Deling used social media to harass and threaten dozens of minor girls into creating pornographic images and videos of themselves for his own sexual gratification. If they refused to comply with his demands, failed to do so quickly enough, or complied but still somehow displeased him, Deling disseminated these images and videos to others. The recipients of these files included the girls' friends and family members, many of whom Deling also threatened to harm and kill. Deling's explanation for such vitriol? "I just do it to make [the victim] feel worthless." (Gov't Ex. 6 at 1). For Deling, cruelty was not just a means to a despicable end; it was a goal in its own right.

When victims, their loved ones, and law enforcement sought to hold Deling accountable, Deling scoffed and gloried in the relative leniency he had received for child

exploitation offenses in the past.  For example: "My lawyers turned a 7 year prison sentence into 4 months before/How hard you think the judge will slap my wrist this time?"(Gov't Ex. 4f at 2).

For these reasons and those that follow, the United States respectfully requests that the Court impose a sentence of 480 months and a lifetime term of supervised release with special conditions.   In support of its recommendation, the government is submitting sentencing exhibits (Gov't Exs. 1-12c), to which it refers throughout this pleading, and which have been provided on a disk for the Court's review prior to the hearing.  An exhibit list is also provided for the Court's review.

## I.      Factual Background

### A.  Deling's Criminal History

Although only 20 years old, Deling has a considerable criminal history involving risk to the physical and emotional safety of his victims.

Deling also pleaded guilty to two counts of possessing child pornography on or about March 27, 2018, in Nicollet County. (PSR ¶ 114).  Those charges arose from Deling—using the alias "Dylan Dawking"—uploading approximately 293 child pornography videos to cloud-based service Dropbox in 2016, when Deling was 17 years old.  During the course of that investigation, law enforcement learned that Deling had uploaded child pornography images of a subsequently identified sextortion[1] victim to a Russian website known to law enforcement as a common venue for sharing child exploitation material.[2] (Gov't Ex. 4b).  Among these materials were child pornography images depicting adults engaged in sexual acts with children, including toddlers, and children engaged in bestiality.

Deling was prosecuted as an adult, given a stay of imposition, and was sentenced to 45 days in county jail. (PSR ¶ 114).  In a psychosexual evaluation associated with those convictions, Deling stated that he did not believe he needed sex offender treatment, but rather participated "so it will look good in court."  When asked what would keep him from recidivating, he responded, "Obviously, I know how serious this is.  I'm going to be a sex offender for ten years.  Obviously, I don't want to do this over again." ▮

▮

▮

---

[1] A portmanteau of "sex" or "sexual" and "extortion."  Sextortion refers to the act of threatening to harm the victim or another—including reputationally, emotionally, or physically—if the victim refuses to provide images of a sexual nature or engage in certain sexual activity.

[2] Deling apparently used a screenshot from this website in connection with his harassment of victims during the instant offense.  Gov't Ex. 4b.

Deling was released on probation on April 24, 2018. *Id.* None of the conduct comprising this offense was accounted for in his plea to the instant offenses.

### B. The Instant Offenses

#### 1. Deling's Conduct

Evidence from the instant investigation reflects that Deling began sextorting minors prior to the child pornography convictions described above, and then recommenced almost immediately after his release.

The instant offenses arose from complaints from minor girls between the ages of 11 and 17, as well as at least one 18-year-old whom Deling sextorted in the summer of 2018. Deling posed as a young African American male to engage his victims in conversation on social media platforms (*e.g.*, Snapchat, Instagram, Kik) using the handles "Jason Keens," "Dylan Nash," and others in an effort to obtain sexually explicit images and videos. Occasionally, Deling would compliment the girls to obtain sexually explicit images and videos. More often, he harassed and threatened retribution if they did not provide images and videos.

In some cases, Deling already had sexually explicit and other compromising images of the girls—provided by others (*e.g.*, from the girl's friend or ex-boyfriend), or by the girls themselves. Deling threatened to and actually did disseminate these images to the girls' friends and family if the girls refused to comply with his demands. He also posted images such images publicly to harass the victims and their family members, and bragged to others about his conduct. For example, in a Snapchat conversation with a friend (identified in Government's Exhibit 6 as "User 3,"), Deling explained that he had "[h]undreds" of nude

4

images or videos from a girl he had dated, as well as "more from others," stating, "I have hoes/That do whatever I say or the nudes go the fam . . . .  Blackmail is my specialty[.]" (Gov't Ex. 6 at 2).

In other instances, Deling extorted sexually explicit images from the girls by threatening to send his associates to rape or kidnap them and/or kill their family members. To underscore his threats, he sent screenshots of maps of the girls' residences, family members' contact information, and other identifiers. Deling also manufactured text messages using an application on his phone to make it appear that he had instructed associates to carry out his threats.  He then posted portions of these text messages to social media.  For example, Deling posted excerpts from these text conversations involving other victims on social media to incite fear, adding a caption meant to imply that he could afford to pay others to harm and kill his victims ("walkin with the bands so I could pay for the hit").  (Gov't Ex. 2 at 1).[3]  The threats Deling posted included, "Kill her family and victimize her then mutilate her body while she's living then leave her to bleed out and set the house on fire," "Go rape that little bitch. She 13 tho so be extra rough and kill her fuckin family," and "Go there and kill the whole family except for [victim name] you 6 rape her and mutilate her but not too bad. Let her live so she can be sold at my sex trafficking auctions[.]" *Id.*

Deling was undeterred by social media company efforts to respond to complaints of his abuse.  Deling repeatedly created new social media accounts to continue his offense

---

[3] Multiple victims' address information is redacted from this exhibit.

conduct after other accounts had been closed due to abuse. For example, Deling captioned a screenshot of a Snapchat advisory that his account had been reported for violating terms of service by stating, "Yeah Snapchat is about to delete my 36th account so hmu[4] if you wanna be on my next one so I can ss[5] your snapcode." (Gov't Ex. 4e at 5).  After one of his Snapchat accounts was closed for violating terms of service, Deling posted to Snapchat using the "Jason Keens" handle, apparently unrepentant: "Guess I'm a pedophile now because I only fw[6] girls under 18 . . . like sorry? I like what I like. And I'm only 19.  Not like I'm 30 fuckin with 15 year olds."  (Gov't Ex. 4a).

Throughout the period relevant to the instant offense, Deling referred to his criminal history with apparent pride, repeatedly posting on social media about his criminal history and the relatively lenient treatment he received. *E.g.*, (Gov't Ex. 4f at 2).  In response to pleas to stop harassing one victim, Deling responded, "Lol[7] I did 30 days in jail for child porn. Got out and started living again[.] That was in April[.] So don't tell me shit[.]" (Gov't Ex. 5 at 2).  Deling also posted a picture of part of his conditions of supervision for his prior offense to Snapchat. (Gov't Ex. 4c).   In response to Minor C's mother's promise to contact the police, Deling sent Minor C's mother topless photos of Minor C along with taunting messages including statements like, "you can't touch me" and "I've dealt with the law 28 times. I know the process." (Gov't Ex. 4d).

---

[4] An abbreviation for "hit me up."
[5] An abbreviation for "screen shot."
[6] Abbreviation for "fuck with."
[7] An abbreviation for "laughing out loud."

Deling also posted screenshots from the Russian website described above that is a common destination for child pornographers to store and trade child pornography images. Specifically, Deling posted a list of eight photo albums he curated, which included titles like "[Victim name] nude with Snapchat username," and "13 year old [Victim's name] nude (email for pw[8])."  (Gov't Ex. 4b at 2).  With respect to the former, this apparently refers to the same album that Deling posted about in a screenshot on Snapchat, captioned "Am I wrong for posting this bitch [Victim's name's] nudes and Snapchat on a website full of rapists and pedos? [laughing emojis] 5 thousand views in 30 mins[.]" *Id.* at 1.

Deling also bragged about having evaded law enforcement for the instant offenses. For example, Deling posted to Snapchat:

> I've blackmailed hundreds of girls. Dozens have called the cops[.]  . . .  How many time [sic] you think the cops paid me a visit for that shit?  . . . I've had 1 girl find my address and my real last name and call the cops. Still nothing happened[.] . . . Cops see my name on their desk, roll their ey[es] and put that report in the paper sh[red]der[.]

(Gov't Ex. 4e at 3).

Deling also wrote, "It's flattering[.] They need the FBI to take me down[.]" (Gov't Ex. 4e at 4).  After another user responded, "Prison prison!" to which Deling replied, "Makes me feel like a real hardened criminal[.] That just raised my ego so much[.]" *Id.*

Deling had successfully concealed this phone from law enforcement during an earlier investigation and while on probation.  While executing a search warrant prior to his March 2018 conviction, law enforcement found iPhone peripherals in Deling's residence,

---

[8] Abbreviation for "password."

but were unable to find any iPhone.  When asked about the iPhone's whereabouts, Deling lied to law enforcement, claiming that he did not have an iPhone.  In Snapchat correspondence on May 22, 2018, Deling bragged, "I[']ve dealt with [law enforcement] 3 times before and each time I hid my phone so well that they couldn[']t find it." (Gov't Ex. 6 at 3).

Later, after Deling's iPhone was seized from him pursuant to another search warrant in August 2018, Deling admitted that he had possessed the iPhone beginning in at least August 2017.  The iPhone data reflected numerous chats, screenshots, images, and videos on Deling's phone reflect sextortion activities beginning in at least February 2018.  Internet history and applications also reflect Deling's searches of victims' addresses and other information in connection with his extortionate threats.  TextNow data shows how Deling created conversations about executing threats to kill, rape, and kidnap victims with fictitious associates.  Deling's phone also contained an application—Keepsafe—advertised as offering "bank-level" or "military-grade" encryption that is designed to hide certain files.  The application is commonly uswoed by child pornographers to hide child pornography files from others who might access their devices.

## 2. Deling's Victims

Deling targeted children ranging in age from 11 to 17 years old.  Another identified victim was 18 at the time of Deling's offense.  His victims live in multiple states across the country.  Many remain unidentified to this day.  Many have suffered and continue to suffer from depression and other mental health issues; some have engaged in self-harm and attempted suicide.  In the interests of brevity, what follows does not discuss all of Deling's

victims or provide a comprehensive overview of his conduct, but rather aims to provide brief illustrations of patterns Deling engaged in during the instant offenses.

### i. Minor A

Minor A was 15 years old when Deling's sextortion began, and turned 16 while it was in progress. Kik chats from Deling's cell phone reflect communication with Minor A already in progress in March 2018 and continuing through May 2018. (PSR ¶ 12). Excerpts of these chats are provided in Government's Exhibits 1a-1c and 6. The chats reflect a variety of methods Deling used to obtain the videos he desired—ranging from complimenting Minor A's body and expressing affection for her, to threating to disseminate child pornography images she produced at his direction. On occasions when Minor A failed to comply quickly enough or expressed reluctance to engage in the activity Deling desired, he threatened her. *E.g.*, (Gov't Ex. 1a). There are multiple conversations in which Deling directs Minor A to film herself in particular poses, directing her to masturbate and to continue creating and sending videos to him until Deling had finished masturbating to them. *E.g.*, (Gov't Exs. 1b and 1c).

Deling continued his attempts to manipulate Minor A even after her family threatened to report his conduct to law enforcement. On May 21, 2018, when confronted about his conduct by Minor A, Deling sought to guilt her and her family out of continuing the investigation, asking, "[D]o you really think I deserve 25 months in prison for it?" and expressing fear about being harmed for being a sex offender if sent to prison. (Gov't Ex. 6 at 2). He promised to delete everything, expressed supposed regret, and threatened suicide

in an apparent effort to guilt the girl to relent. (Gov't Ex. 6 at 2).     Yet—apparently undeterred—Deling continued to threaten, extort, and exploit many more girls thereafter.

### ii.   Minor B

Minor B was 15 years old and living in Washington at the time of the offense.[9]  (PSR ¶¶ 11, 13).  She reported that Deling contacted her using a Snapchat account associated with his "Jason Keens" persona. *Id.*  Deling threatened to rape Minor B and kill her parents after she refused to provide him with nude images of herself. *Id.*  Deling requested Minor B's address, and when she refused to provide it, Deling sent screenshots containing her address and information about her parents, which he searched for on his phone. (Gov't Ex. 3d).

Among these were screenshots that included the threat described by Minor B, which reads: "[Minor B's address]. Kill her parents who adopted her[10] then you 6 rape her and bring her back to me because she's a pretty little thing[.]"  The screenshot shows another party to the conversation responding, "On it boss[.]" (Gov't Ex. 3c).  Deling then posted an excerpt of this conversation that included his threats on social media for others to see. (Gov't Ex. 2 at 1).

 Minor B called 911, then informed her parents of the threats.  Minor B's mother called Deling's number, and heard silence on the other end of the call.  Deling made multiple phone calls to Minor B's residence, (Gov't Ex. 3e), which Minor B's parents and

---

[9] Paragraph 11 of the PSR erroneously refers to her age as 16.
[10] Minor B was adopted. (PSR ¶ 11).  She had struggled with that status and related bullying considerably in recent years, including by engaging in self-harm.

a responding police officer answered.  Deling spoke to the officer and feigned ignorance as to why Minor B and her mother had called him.  He placed mocking posts on social media about the incident, instructing others to call Minor B's number, stating, "Save your boy and everyone call this number. They won't know who tf[11] to prosecute then[.]" (Gov't Ex. 2 at 2).  He then posted additional screenshots of his phone, recounting his phone calls with Minor B's mother and the police, and annotating his posts with mocking statements and laughing emojis. *Id.* at 3-4.

### iii. Minor C

In June 2018, Deling used Snapchat, Kik, and Skype to demand child pornography from Minor C, who was then 17 years old.  Minor C produced child pornography images in response to Deling's threats to disseminate them to her family.  When Minor C ultimately refused Deling's demands, Deling disseminated sexually explicit images of Minor C to multiple members of Minor C's family.

Minor C's mother was instrumental in providing information to law enforcement about Deling's threats to Minor C and other victims.  While she helped law enforcement to build its investigation, Minor C's mother witnessed what she describes as the destruction of Minor C's and her family's lives.  In a statement submitted to the Court, Minor C's mother described Deling's offense as having "shattered" and "smashed" Minor C and her family, causing abiding pain that deepened preexisting wounds from Minor C's depression

---

[11] Abbreviation for "the fuck."

and anxiety.  As Minor C's mother stated, knowing that Deling had been identified and detained brough "a sense of relief" and a desire to begin to recover, although she wrote:

> But does a person ever really recover from this?  I try not to think about this anymore, but at times it comes to mind, and I feel a profound sense of sadness and grief.  He stole so much from my daughter, and from our family, things we can never get back.

After reflecting upon the steps she took to protect other victims of Deling's crimes, Minor C's mother asks the Court to do the same:

> I implore you to consider the impact that can be **avoided** for other families if Dylan is behind bars and unable to perpetrate this behavior again.  He has already proven that incarceration is not enough for him to stop victimizing underage girls.  Every day he is in prison is a day someone doesn't have to suffer at his hands.

### iv.  Minor E

Minor E began corresponding with Deling on Snapchat in and around July 2016, and continued to do so via Snapchat and Kik for approximately one year.  It was during this period that Deling directed her as to how to pose in approximately 20 nude images she produced for him at his direction. Minor E, then 15 years old, reported having done so voluntarily.  Minor E lived in Minnesota, and reported having met Deling in person on two occasions in July 2017.  After a falling out with Deling that led Minor E to block him on social media, Deling created accounts in other names and attempted to contact her. Approximately two to three months later—in and around Spring 2018—Deling, posing as "Jason Keens," contacted Minor E threatened to disseminate nude images of her to her family and fellow high school students. He also threatened to "come for her family."

### v.  Minor F

To underscore his threats to harm then 13-year-old Minor F and her family, Deling sent Minor F screenshots of her personally identifiable information (PII), including her address, phone number, and social security number, as well as PII for her grandparents.

### vi.   Minor G

Deling attempted to retaliate against 13-year-old Minor G by posting topless images of Minor G to her mother's Facebook profile, but found himself unable to do so because they were not Facebook friends.  (Gov't Ex. 4f at 1.)  As a result, Deling took to Snapchat, posting the images there with a message to others containing the girl's Snapchat handle, as well as a message that stated, "Check your Facebook mommy," directed at Minor G's mother. (Gov't Ex. 4f at 2).  When Minor G's mother used the girl's Snapchat to respond that she was reporting Deling's threats to the police, Deling posted:

> Well now you're threatening the wrong rich mf.[12]
> My lawyers turned a 7 year prison sentence into 4 months before
> How hard you think the judge will slap my wrist this time?

(Gov't Ex. 4f at 2).

Deling then proceeded to taunt Minor G's mother, referring to Minor G as her "whore daughter," citing specific information about their house and address, including a screenshot from a map application, and making sexually explicit references to both Minor G and her mother. (Gov't Ex. 4f at 3).

### vii.   Minor N

---

[12] An abbreviation of "motherfucker."

13

To underscore his sextortionate threats, Deling sent Minor N, then 16, messages that included screenshots of text conversations implying that girls had been kidnapped and their families killed for refusing to send Deling nude photos of themselves.

### C. Additional Conduct

#### 1. Previously Unidentified Minors

In addition to those 15 victims who had been identified at the time of Deling's plea, the FBI has subsequently identified more victims, including some identified subsequent to the issuance of the most recent version of the PSR.  Some of these victims are described below.

##### i. T.K.

In and around June or July of 2018, when T.K. was 16 years old, Deling solicited nude photos of T.K. that he threatened to disseminate to T.K.'s family if she did not send more. He also sent T.K. information about her father's name and address, which T.K. reported made her scared and uncomfortable.  Deling told T.K. that he was not afraid of the police because he had dealt with police in the past. T.K. also reported that Deling sent her videos of girls simulating oral sex on hairbrush handles.

Now, approximately two years later, T.K. notes in a statement to the Court that the impact of Deling's crimes has been traumatic and enduring:

> Every day I wake up still with fear, not of this man because I know he is unable to do anything to me anymore, but of any other man or boy who crosses my path. I fear that the same thing will happen again and I will be left feeling the way he made me feel and still makes me feel. My family did not know of the situation until this last summer when I had to speak with the victim specialist. I was too scared to even tell anybody

about the situation. He made me feel so poorly of myself and sometimes I still feel like that to this day. Feeling like I can be manipulated to do things I do not want. Feeling like I can be forced to do things out of fear for myself. He has made me feel horrible about my body and this may sound bad but he made me feel like I was raped even though he never touched me. Forcing me to do what I did.

### ii.   D.H.

D.H. was approximately 12 years old when Deling began chatting with her via Kik, beginning at least as early as February 27, 2017, and continuing to contact her until after his plea in this case. (PSR ¶ 103).  In the approximately year and a half before Deling's arrest in August 2018, Deling directed D.H. to produce multiple child pornography images to send to him.  Images depicting D.H.'s genitals can be found in their Kik chats. (Gov't Ex. 7).[13]  Deling also later confirmed to the FBI that he sent D.H. a black dildo via a friend's house in West Virginia to avoid their correspondence from being detected.  (Although Deling knew D.H. was a minor during this period, he initially believed that she was approximately 16 or 17 years old based on her statements, further described below.)

On August 3, 2018—shortly after his arrest on his state probation violation—Deling called D.H. from the Nicollet County jail, provided her with his passwords, instructed her to log into his Snapchat, Instagram, and Kik, and to delete messages.  (PSR ¶ 20; Gov't Ex. 12). He also instructed D.H. to advise certain Snapchat contacts that he was incarcerated. *Id.*

---

[13] The government has provided sanitized versions of these images for the Court's review given Deling's insistence in recorded jail calls after the entry of his plea that D.H. was not a victim.

Deling was charged in the instant, federal case on February 13, 2019.  According to recordings obtained from Sherburne County jail, Deling maintained communication with D.H. by June 22, 2019.  Thereafter, in a recorded call on July 14, 2019, D.H. told Deling that she had lied about her age previously, and had actually just turned 15—not 18—just three days prior.  Deling told D.H. that this information "didn't change nothing[.]" (Gov't Ex. 8a).  He then went on to explain that she would need photo identification to engage in video visits with him, and instructed her to get false identification on the internet. (Gov't Exs. 8b).  The next day in another recorded phone call, Deling confirmed her age: "It's 1-5 right?" D.H. responded, "Yeah." (Gov't Ex. 9).   Thereafter, they discussed the implications of D.H.'s age, Deling's likely sentence, and their plans continue their communications.

Deling pleaded guilty before this Court on July 18, 2019.  In a series of recorded calls and electronic messages, Deling continued to correspond with D.H. in the weeks following his guilty plea in the instant case.  When Sherburne County Jail blocked Deling's ability to dial D.H.'s known number, Deling sought to circumvent those controls by making calls through others, including with the assistance of his grandmother and friends inside (*e.g.*, federal defendant Travis Mayer, who is currently facing child exploitation charges of his own) and outside (*e.g.*, "Ryan") the jail. (PSR ¶ 2).  Deling instructed D.H. to use different numbers through applications including TextNow, (Gov't Ex. 10b), which he used in furtherance of the instant offense.  At one point, Deling complained that his grandmother had not been sufficiently careful in establishing new accounts for him to use to circumvent the measures, noting "[S]he needs to be like, this is my new number that you

16

can call me at. And they're going to think it's my grandma's number. She needs, she has

to start learning how to talk in code." *Id.*

On July 28, 2019, Deling described his apparent frustration at measures Sherburne

County Jail took to prevent him from contacting D.H.:

> They already took away my free life, they're not going to fuck
> with my life on the inside too. They ain['`]t going to fuck with
> my happiness, I'm not going to let them. But I have a, I have
> really strong feeling they are going block this number too come
> tomorrow, just to let you know.

*Id.*

He also again instructed D.H. to get false identification to allow their continued

communication:

> [G]et that license, whenever you get some money in. And once
> it says July 11th, 2001, and they see that you're eighteen,
> they're, they're going to have to get on their knees and
> apologize to me. They got you mixed up with somebody else
> or something. I don't know what the fuck they're talking about.

(Gov't Ex. 10a).

Despite efforts to prevent Deling from contacting D.H., Deling has made clear his

intention to continue to contact her after he is sentenced, both in recorded calls to D.H. as

well as to his friend Ryan.  As reflected in government's exhibit 11, Deling instructed Ryan

to contact D.H. for him after Sherburne County Jail interventions and the FBI interviewed

D.H. and her mother, telling Ryan to contact D.H. to reassure her that they could

recommence their contact after sentencing:

> RYAN      She, she's not allowed to call you anymore.
> DELING    That's what she said?

| | |
|---|---|
| RYAN | Yeah, because the FBI came to her house and talked to her mother and her. |
| DELING | Hey, well, tell her this: tell her that the jail blocked her number, but once I get sentenced, then the FBI can't do nothing. |
| | . . . |
| DELING | Man, fuck the feds, fuck the, fuck the, fuck the Assistant U.S. Attorney, fuck the U.S. Attorney, fuck all these motherfuckers, man. Once I get sentenced, they can kiss my white ass. |
| RYAN | Mmmhmm. |
| DELING | Hey, I'm going to have some nice words for their asses once I get sentenced, right in the courtroom. |
| | . . . |
| | We both know I'm never coming home. They're about to smack me with that 40 years. I don't even give a fuck. I'm done caring at this point. |
| | . . . |
| | [O]bviously I'm not fine with it, but I might as well make the best of it, 'cause there ain't, there ain't, there ain't shit I can do about it. So just text her, and let her know that once I'm sentenced, they can't do shit. |

(Gov't Ex. 11).

### 2. As yet unidentified victims

Multiple victims who have yet to be identified also suffered Deling's abuse. For example, according to messages from Deling's cell phone, one victim begged "Plz don't do it," when Deling threatened to disseminate videos. (Gov't Ex. 5 at 1). Deling demanded to know whether the victim would send additional materials, stating "Answer me bitch." *Id.* When threatened with police intervention, Deling responded, "Okay that's a threat.

Time for the family to see[.]" *Id.*  When the user of the victim's account[14] responded, "This is actually harassment/Towards a MINOR," Deling responded, "It sure is . . . . It's also blackmail and child porn[.] You think I give a fuck?" *Id.* at 2.

### 3.   Post-Indictment and Plea Conduct

In addition to his ongoing efforts to circumvent controls to contact minor victim D.H., Deling has engaged in a variety of disruptive behaviors since being charged and pleading guilty before this Court. (PSR ¶ 2).  These have included inciting other inmates not to follow lockdown orders and pretending to make calls to his attorney to circumvent controls on his call. *Id.*  He has also engaged in apparently dilatory tactics throughout the instant case, including making false allegations that his attorney making unwanted sexual advances towards him. (Doc. 51: Letter).

## II.   Analysis

The Court employs the U.S. Sentencing Guidelines as "the starting point and the initial benchmark" in imposing its sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Court then must consider the factors enumerated in 18 U.S.C. § 3553(a), in determining whether the applicable guideline range provides for an appropriate sentence.  *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009).  Where the Court finds that the Sentencing Guidelines adequately account for the offense and relevant

---

[14] At one point during the chat contained in Government's Exhibit 5, the user apparently changed, as a response in the middle of the exchange stated, "This is her best friend." (Gov't Ex. 5 at 1).

circumstances, it "shall impose a sentence of the kind, and within the range" prescribed. 18 U.S.C. § 3553(b)(2).

### A.  U.S. Sentencing Guideline Calculations

The PSR assesses certain upward adjustments—related to the depiction of victims masturbating (*i.e.*, commission of a sexual act), certain acts of distribution, and involving one victim's age—that the parties did not contemplate in the plea agreement. *See* (Doc. 43: Gov't Obj. to Preliminary PSR, ¶¶ 8-10).  Given the Court's obligation to calculate the applicable guideline range correctly, *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1904 (2018), the government does not object to the PSR's calculation.  However, the government will not advocate for their application.  Regardless, there is no effect on Deling's overall guideline range.  Both the PSR and the government concur that the overall applicable U.S. Sentencing Guideline range of lifetime imprisonment is capped at the statutory maximum term of 840 months' imprisonment, based on Deling's total offense level of 43 and a criminal history category of V. (PSR at ¶¶ 101, 117, 151).

It appears that Deling's prior sentence includes an ongoing period of supervision following his Nicollet County sentence for possessing child pornography, which was left unaddressed during proceedings related to a violation of his probation conditions. (PSR ¶ 114).  To the extent that any of Deling's prior sentence remains undischarged, Deling's service of his sentence for the instant offenses shall be imposed consecutively to his undischarged state sentence. USSG §5G1.3(a).

### B. Considerations under 18 U.S.C. § 3553(a)

Deling was never satisfied by just victimizing children for his sexual gratification. Instead, he wanted more: to demean and devalue these girls, and to instill fear in them and their loved ones. Indeed, during one of the most difficult and vulnerable periods of girls' lives—their preteen and teenage years—Deling went out of his way to degrade and humiliate them for no purpose other than his own amusement. As he stated when one unidentified victim's boyfriend begged Deling to stop extorting his girlfriend, and asked why Deling continued despite already having gotten numerous sexually explicit images: "I just do it to make her feel worthless." (Gov't Ex. 6 at 1). Deling's behavior evinces deeply held misogyny and a keen desire to control and prey upon the weak and vulnerable. Deling weaponized his victims' shame, embarrassment, and love of their family and friends for his own amusement.

Deling not only threatened retaliation generally if his victims did not comply with his demands. Instead, if a girl did not comply quickly enough, enthusiastically enough, or just to his liking,[15] Deling made good on his threats and distributed child pornography depicting the girl to her friends, family, and strangers. (PSR ¶12). He then mocked them for their fear and humiliation. For example, Deling took Minor G's entreaties—"Please, leave me and my family alone now," "I'm only fucking 13 you can go to jail for this. leave

---

[15] *E.g.*, In a chat with Minor A, Deling threatened, "I told you what would happen if you fell asleep. [emoji] good luck," causing Minor A to apologize for being unavailable, and prompting Deling to instruct her to go to the bathroom to produce more child pornography. (Gov't Ex. 1a). In another chat, Deling instructed Minor A, "And at least breathe heavy or moan for me. Make it fun." (Gov't Ex. 1b at 3).

me and my family now please"—and superimposed them over topless images of her, which he then sent to her family member. (Gov't 4f at 1). Deling then went further, harassing and threatening victims' friends and family who sought to protect them. With Minor F's family member, Deling sent images of the victim to the family member and mocked, "Not my fault your stepdaughter is a whore/A sexy ass whore with 36 Triple D tits" (Gov't Ex. 4d at 2).

Deling took pains to learn personal details about the victims that made them feel most vulnerable, and exploited them. Minor B's long struggle with her adopted status, which led her to self-harm, became a weapon for Deling to harass her—both directly and through instructions to others to do so online. (Gov't Ex. 2).

That Deling was able to create such a broad swath of misery and fear across dozens of victims throughout the country in a matter of weeks speaks to the gravity of the offense, and the need to deter Deling and protect the public. The breadth and severity of these activities—coupled with Deling's immediate recidivism after release on supervision—demand a lengthy sentence that ensures that Deling will never be allowed to go unsupervised in the community.

From his prior statements, *e.g.*, (Gov't Ex. 4a), Deling appears to believe that his youth is a mitigating factor. However, his commencement of these activities as a juvenile, and continuing them for years into adulthood, provides considerable cause for concern about escalation and recidivism over time. Despite multiple early interventions by law enforcement in his life, Deling has steadfastly continued this behavior. Indeed, far from being a deterrent, Deling appears to have taken his prior child pornography convictions

and law enforcement interventions as badges of honor.  He bragged about prior encounters with police, convictions, sentence, and conditions of supervision, emphasizing how leniently he had been treated previously to mock victims' and their loved ones' hopes that he would be held accountable.  (Gov't Exs. 2 at 3-4, 4c, 4d, 4f, 5, 6).

Deling has consistently treated his victims and their loved ones with contempt, and scoffed at efforts to deter his behavior.  Even after pleading guilty and facing the serious consequences of his actions, he refuses to acknowledge them and apparently intends to circumvent them as much as possible—including by actively planning for a time when he can continue to correspond with a minor victim.  As a result, the government is requesting a lengthy sentence, which apparently is the only means of providing a meaningful deterrent to Deling or protecting the public from his crimes.

The government's recommended sentence and agreement to dismiss Count 2— which would have resulted in an additional mandatory consecutive 10-year term of imprisonment—was predicated on Deling's willingness to enter a timely guilty plea that incorporated all of his victims, stipulate to their applicable guidelines, agree to a joint recommendation to a lifetime term of supervision, and stipulate to any restitution.  Such a disposition was also intended to spare the victims and their families unnecessary distress of protracted pretrial litigation, trial, and/or a contested sentencing.  Even then, the government believed that the mandatory minimum term was insufficient to ensure the safety of the community and deter Deling, and instead reserved the right to recommend a sentence of up to 40 years' imprisonment.

That recommendation predated Deling's post-plea conduct, which has been abysmal—insisting upon continuing to contact one of his minor victims, circumventing jail controls to do so, and lashing out when those controls were reinforced. Nonetheless, bound by its plea agreement and its consideration for the victims, the government continues to recommend a term of 40 years' imprisonment with lifetime supervision to follow.

### C. Restitution

In his plea agreement, Deling acknowledged that the Mandatory Victim Restitution Act (18 U.S.C. § 3663A) applies. As such, Deling agreed that he was required to pay restitution to the victim of the offense of conviction. *See* 18 U.S.C. §§ 3663A(a)(1),(c)(1)(A)(i), (c)(1)(B). To date, no victim has requested restitution. The government will notify the Court as soon as possible upon receipt of requests submitted subsequent to this filing.

### D. Supervised Release

Deling has demonstrated his lack of willingness to conform to the conditions of supervision imposed upon him, recidivating immediately upon release from his prior conviction. As a result, the Court should impose the term of supervision recommended by the U.S. Sentencing Guidelines—life. For someone as unrepentant and defiant as Deling has shown himself to be even after pleading guilty, ongoing Court supervision is essential to public safety.

Additionally, the Court should impose special conditions tailored to Deling's offense. The Court has "wide discretion when imposing terms of supervised release within the statutory framework provided by Congress." *United States v. Fields*, 324 F.3d 1025,

1026-27 (8th Cir. 2003).   Special conditions of supervised release are appropriate if "reasonably related" to the applicable sentencing factors described in 18 U.S.C. §§ 3583(d)(1), 3553(a), and involve "no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervision, 18 U.S.C. § 3582(d)(2).   In imposing such restrictions, the Court must make its findings "on an individualized basis . . . ." *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006).

Given the nature of the offense, the Court should require Deling to participate in sex offender treatment programming, and should prohibit Deling from accessing electronic devices and the internet.   Additionally, the special conditions should restrict his access to minors and include an order not to contact any victims of the instant offenses and of the conduct to which he pleaded guilty in the plea agreement (which applies to unidentified and identified victims).   This is particularly necessary here given Deling's statements that evince a belief that he has carte blanche to do what he wishes after sentencing: "I'm going to have some nice words for their asses once I get sentenced.  . . .  They're about to smack

me with those 40 years. I don't even give a fuck.  . . . Once I'm sentenced, they can't do shit." (Gov't Ex. 11).

## III.   Conclusion

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence that includes a term of imprisonment of 480 months' imprisonment and a lifetime term of supervised release.

Date: August 3, 2020                              Respectfully Submitted,

ERICA H. MacDONALD
United States Attorney

*/s/ Miranda E. Dugi*
BY:  MIRANDA E. DUGI
Assistant U.S. Attorney
Attorney ID No. 5140546 (NY)